West 88A LLC, Petitioner-Landlord-Appellant, "
against
Jane Doe," Respondent-Tenant-Respondent, and "John Doe" and "Jane Doe #2," Respondents.



Landlord, as limited by its briefs, appeals from so much of an order of the Civil Court of the City of New York, New York County (Timmie Erin Elsner, J.), dated August 29, 2017, as granted tenant's motion for summary judgment dismissing the petition in a holdover summary proceeding, severed the second and third counterclaims without prejudice to the filing of a fair market rent appeal, and denied landlord's cross motion for summary judgment of possession.




Per Curiam.
Order (Timmie Erin Elsner, J.), dated August 29, 2017, insofar as appealed from, modified to the extent of dismissing the second and third counterclaims; as modified, order affirmed, without costs.
The basic facts are not in dispute. The building at issue, 317 West 88th Street, was originally subject to rent control. The subject unit, apartment #2 in the building, was decontrolled in or about 1954 due to occupancy by the Klopper family, the prior owner of the building (see NY City Rent and Rehabilitation Law [Administrative Code of City of NY] § 26—403[e][2][i][3]; Matter of Delillo v New York State Div. of Hous. & Community Renewal, 45 AD3d 682 [2007]). Upon the enactment of the Emergency Tenant Protection Act of 1974 [ETPA], the apartment became subject to rent stabilization, but was temporarily exempt from coverage because it was still occupied by the Klopper family. DHCR registration records confirm that the subject apartment was registered as rent stabilized in 1984, and then registered as "temporarily exempt" from 1990-2013.
In August 2013, the building was sold to the current owner. Apparently pursuant to the terms of the sale, Harold Klopper was permitted to remain in occupancy of apartment #2 through January 31, 2014 at a rental of $3,500 per month.
After Klopper's departure, the apartment was rented to tenant, sued herein as "Jane Doe," in April 2014, pursuant to an unregulated lease at a rental rate of $3,600 per month. Notably, landlord did not give tenant a certified written notice of high rent deregulation as required by Rent Stabilization Law [Administrative Code of City of NY] § 26-504.2(b), and Rent Stabilization Code [9 NYCRR] [RSC] § 2520.11(u). Upon the expiration of tenant's one-year lease and the termination of her ensuing month-to-month tenancy, landlord commenced this holdover proceeding in January 2017, alleging that tenant had no right to continued occupancy of the allegedly unregulated apartment.
We agree with Civil Court that the apartment at issue is subject to rent stabilization. As stated above, the apartment became subject to rent stabilization in 1974 pursuant to the ETPA, but was temporarily exempt because it was continually occupied by the Klopper family. Pursuant to RSC § 2520.11(i), use of the premises for the owner's immediate family rendered the premises exempt from rent stabilization "so long as" the premises were used for that purpose (see 22 CPS Owner LLC v Carter, 84 AD3d 456 [2011], lv denied 17 NY3d 950 [2011]). Thus, although the Klopper family occupied the apartment for several decades after passage of the ETPA, the exemption from rent stabilization was, as a matter of law, only temporary, and the apartment reverted back to its stabilized status upon the sale of the building (see generally Federal Home Loan Mtge. Corp. v New York State Div. of Hous. & Community Renewal, 87 NY2d 325, 333 [1995]). The temporary nature of the RSC § 2520.11(i) exemption would be rendered meaningless if landlord were allowed to utilize the expiration of the temporary exemption as a deregulating event.
Nor was Klopper's brief (five and one-half month) occupancy of the apartment after the sale of the building shown to be anything other than a license. No lease or rental agreement with Klopper for the post-sale period is contained in the record and the unit was not registered with DHCR after the period of owner exemption expired.
However, Civil Court erred in directing tenant, as the first rent-stabilized tenant of the apartment, to file a fair market rent appeal. A fair market rent appeal does not lie in the particular circumstances of this case, because the subject apartment was not "subject to the City Rent Law on December 31, 1973" (RSC § 2522.3[a]). The apartment was, in fact, decontrolled some 20 years before that date. Nor does the Code even establish any means for setting the initial legal rent for an apartment that was decontrolled in the mid-1950s, and first rented thereafter as a rent stabilized apartment more than a half-century later (see RSC § 2521.1). In this unique situation, "the rent charged and collected from the [tenant] became the legal regulated rent" (Matter of Muller v New York State Div. of Hous. & Community Renewal, 263 AD2d 296, 303 [2000], lv denied 95 NY2d 763 [2000]; see Matter of Hatanaka v Lynch, 304 AD2d 325 [2003]; Matter of Fichera v New York State Div. of Hous. & Community Renewal, 233 AD2d 107 [1996]). Thus, the counterclaims alleging a rent overcharge are dismissed.
We have considered landlord's remaining contentions and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER OF THE COURT.
I concur I concur I concur
Decision Date: June 21, 2019